UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER GERALD O'BRIEN,<br>Plaintiff,<br>v.<br>FRANK BISIGNANO, Commissioner of Social Security,<br>Defendant. | Case No. 2:25-cv-2122-JDP (SS)<br><br>ORDER |

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 9 & 11. For the reasons discussed below, the court grants plaintiff's motion, denies the Commissioner's motion, and remands the matter for further proceedings.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards have been applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process, the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

On August 12, 2019, plaintiff filed an application for DIB, alleging disability beginning July 29, 2019. Administrative Record ("AR") 534. This application was denied initially and on reconsideration. AR 144-58, 160-72 . Plaintiff requested and received a hearing before an ALJ. AR 216-17. Several hearings were held. AR 35-39, 40-70. On July 23, 2021, the ALJ issued a decision denying plaintiff's disability claim. AR 174-88. The Appeals Council vacated this decision because one of the hearings had significant audio problems. AR 196-97. The ALJ held additional hearings, including another hearing on May 21, 2024, at which claimant, a vocational expert, and a psychological expert testified. AR 77-127. On September 24, 2024, the ALJ issued a decision denying plaintiff's disability claim. AR 15-27.

Specifically, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since July 29, 2019, the alleged onset date.

3. The claimant has the following severe impairments: lumbar spine strain and sprain, hypothyroidism, hepatic steatosis, a mood disorder and an anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

   * * *

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 except he can frequently reach. He can sit, stand and walk each for 1 hour at a time, for a total of 8 hours. He does not require the use of a cane. He can continuously balance. He can frequently climb ramps and stairs, stoop and kneel. He can occasionally climb ladders and scaffolds, crouch and crawl. He can occasionally tolerate exposure to dust, odors, fumes and pulmonary irritants. He can frequently tolerate exposure to humidity, wetness and extremes of heat and cold. He is capable of simple repetitive tasks. He requires a nonpublic work environment. He can work in proximity to coworkers but not in coordination with coworkers. He may be absent, late or leave early once every two months. He can deal with stress consistent with simple repetitive tasks. He is capable of self-paced work with end-of-day work quotas.

   * * *

6. The claimant has no past relevant work.

   * * *

7. The claimant was born [in] 1971 and he was therefore a younger individual age on the alleged onset date of disability. [In] 2021, the claimant changed age categories and became an individual closely approaching advanced age.

8. The claimant has at least a high school education.

9. Work exists in significant numbers in the national economy that

> the claimant could perform.
>
> * * *
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, from July 29, 2019, through the date of this decision.

AR 21-27 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request. AR 1-7. He now seeks judicial review under 42 U.S.C. § 405(g).

**Analysis**

Plaintiff raises five issues. He claims that: (1) the ALJ failed to provide clear, convincing, and well-supported reasons for discounting plaintiff's allegations of mental dysfunction; (2) the ALJ failed to properly evaluate the opinion of the psychological expert Nicole Martinez, Psy.D.; (3) the ALJ failed to properly evaluate the examining medical source opinion of the consultative psychologist Alysia Liddell, Ph.D.; (4) the ALJ failed to properly evaluate the examining medical source opinion of the consultative psychologist, Michelina Regazzi, Ph.D.; and (5) the ALJ erred by relying on vocational expert testimony at step five that was inconsistent with the Dictionary of Occupational Titles. ECF No. 9 at 10. The court finds the first argument persuasive, and so does not consider plaintiff's remaining arguments.

On May 21, 2024, plaintiff testified before the ALJ about his symptoms. AR 92-119. He stated that has intense depression, anxiety, and panic attacks. AR 103. He testified that he is depressed every day and has little motivation. AR 104. When he does find motivation, his severe anxiety prevents him from doing things, such as driving. AR 108-110. Therapy and medication have not improved these symptoms. AR 109, 149. He stopped maintaining his hygiene. AR 807. He is forgetful. AR 56. He has trouble getting along with others. AR 638-39. His daily activities are very limited. AR 807. He does not cook, clean, or shop, and he only bathes once a week and shaves once a month. AR 807. Plaintiff submitted documentation from his (now-deceased) wife

and current housemate reporting his withdrawn behavior and lack of engagement in activities. AR 618-28, 673.

To evaluate a claimant's subjective testimony, an ALJ must engage in a two-step process. First, an ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). "[Plaintiff] need only show that it could reasonably have caused some degree of the symptom." *Id.* Here, the ALJ found that plaintiff had a mood disorder and an anxiety disorder, and that they were "severe impairments." AR 21. The ALJ implicitly found that plaintiff's mood and anxiety disorders could reasonably be expected to cause his symptoms. AR 22-23; *see also* ECF No. 11 at 4 (addressing second step of the analysis).

Second, absent evidence of malingering, an ALJ must offer "specific, clear and convincing reasons" for rejecting a claimant's testimony. *Garrison*, 759 F.3d at 1014-15; *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The ALJ first discussed plaintiff's symptom testimony in Finding 4, in determining that plaintiff's mental health impairments "do not meet or equal any of the relevant mental disorder listings . . . ."[1] AR 21. In this section of the decision, the ALJ cited an October 13, 2019 examination, by consultative psychologist Alysia Liddell, Ph.D., who noted that plaintiff "demonstrated normal mental status examination findings including friendly behavior. His stream of mental activity was within normal limits. He was fully oriented. His memory was intact and he had no difficulty with calculations. He was able to adequately concentrate. His judgment was within normal limits despite anxious mood."[2] AR 21 (citing AR 804-09.)

Plaintiff notes that this same examination indicated that at some points plaintiff appeared "slightly odd," and his "overall mood did appear anxious." AR 807. Plaintiff did not drive himself to the evaluation; a friend drove him. AR 804. He reported to the psychologist that he

---

[1] Plaintiff does not dispute this determination.

[2] It bears mention that although the ALJ cited these findings approvingly and found the examination "thorough," she rejected the opinions of Dr. Liddell as "unpersuasive." AR 25.

was filing for disability due to "depression, mental sluggishness and anxiety." *Id.* He described his anxiety thus:

> I have lots of anxiety. Sometimes when driving I just want to stop at the red light and have to jump out of the car. The anxiety kills me. I used to have a hard time driving going across the bridge and would have these extreme panic attacks. I would have to roll down the window and take deep breaths or talk to myself just so I felt like I didn't have to jump out of the car. I always try to pull over. I don't like to be around large social crowds and situations. . . . I think it reminds me of all the shootings that have been happening and that creates more panic and anxiety.

AR 805. During Dr. Liddell's examination, plaintiff reported that he was currently taking clonazepam.[3] *Id.* Medical records reflect a prescription for clonazepam to be taken as needed. AR 772, 774, 820.

The ALJ also cited an intelligence test from September 21, 2023, but does not connect that test to plaintiff's symptom evidence. AR 21 (citing AR 889-95). After citing this test, the ALJ noted that "[t]here is an overall lack of documentation of ongoing treatment showing that claimant has raised issues related to ongoing cognitive, social interaction, attention, or adaptation issues." AR 22. The ALJ found that plaintiff's mental impairments did not meet or equal the severity of an impairment listed under 20 C.F.R. part 404, subpart P, appendix 1, but that they caused "(1) a mild limitation in understanding, remembering, or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, or maintaining pace; and (4) a moderate limitation in adapting or managing himself." AR 22.

The ALJ further discussed plaintiff's symptom testimony in Finding 5 and noted "there is evidence that is consistent with the claimant's allegations" including medical reports and function

---

[3] Dr. Liddell found plaintiff moderately impaired in his "ability to remember and carry out very short and simple instructions" and his "ability to interact with coworkers . . . which is likely to induce increased frustration." AR 808. She found that his "ability to deal with various changes in the work setting is moderately to markedly impaired" due to the complexity of the work environment. *Id.* These impairments were due to his depression and anxiety. *Id.* The ALJ found Dr. Liddell's conclusions unpersuasive based on "issues with the consistency factor of 20 CFR 404.1520c(c)(2)." AR 25-26.

reports. [4] AR 22-23. Despite detailing this consistent evidence, the ALJ also found that "his allegations are not entirely consistent with the evidence . . . ." AR 23. The ALJ then discussed medical evidence relating to plaintiff's physical symptoms even though the issue before her was the plaintiff's testimony regarding his "intense mental health symptoms." *Id.* After summarizing medical evidence showing that plaintiff was taking his thyroid medication and addressed his hypertension, the ALJ stated, without elaboration, that "[t]here is similarly a lack of documentation on ongoing treatment related to the claimant's alleged mental health symptoms." *Id.*

Accordingly, the ALJ's only stated reason for discounting plaintiff's symptom testimony regarding his mental health impairments is that there is a "lack of documentation of ongoing treatment" for those impairments.[5] AR 22, 23. In determining whether a claimant's testimony regarding the severity of symptoms is credible, ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The record reflects that plaintiff sought treatment to address his mental symptoms. Plaintiff experienced some mood disturbances from his hypothyroidism, which he addressed through replacement therapy for his thyroid deficiencies. AR 101, 206, 821, 979, 912-13. The ALJ noted that this replacement therapy was effective but had to be tightly monitored. AR 23. Plaintiff's primary care physician noted that his hypothyroidism "can cause depression and other mood changes." AR 821.

Meanwhile, mental health reports confirmed plaintiff's complaints of mood swings, depression, panic attacks, and anxiety. AR 805, 883, 911. Examinations reflected that petitioner was anxious or irritable. AR 804-09, 867, 890-91. Providers diagnosed plaintiff with depressive disorder in July 2002, and recurrent major depression in January 2007, well before the alleged date

---

[4] This determination satisfies the first step of the two-step analysis required by *Garrison*, 759 F.3d at 1014-15.

[5] The ALJ also raised this "lack of documentation of ongoing treatment" in finding that plaintiff's mental health symptoms did not meet or exceed the paragraph B criteria of the listings. AR 22.

of disability onset. AR 748. A decision by the Department of Veterans Affairs ("VA") found plaintiff 100% disabled and determined that his mood disorder "causes [his] total occupational and social impairment." AR 910. That decision found that plaintiff suffered "[n]ear-continuous depression affecting the ability to function independently, appropriately and effectively" and "[n]ear-continuous panic affecting the ability to function independently, appropriately and effectively." AR 911. Plaintiff treated his mental health symptoms with medication, which was prescribed to be taken as needed. AR 64, 109, 774. He attempted talk therapy at the VA, but it did not go well, so he tried to work through his symptoms without therapy. AR 805.

The question here is whether the extent of plaintiff's treatment for his mental health conditions undermines his subjective symptom evidence. This is not a case where there is no medical evidence to support the existence of the underlying mental condition and its impairments. *See Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005) (noting that assertion of depression and fatigue was undermined by lack of diagnosis and mental health treatment). To the contrary, plaintiff was diagnosed with recurrent major depression years before the date of onset of alleged disability. AR 748. Plaintiff also discussed his panic attacks and anxiety with his provider, who prescribed him medication to be taken as needed. AR 816, 820.

Rather, ALJ's decision appears to have been based on the lack on "ongoing" treatment during the years that this case was being decided at the agency level. Plaintiff accurately notes that the "record showed an overlap in [plaintiff's] symptoms stemming from his hypothyroidism and his mental impairments." ECF No. 9 at 11. Plaintiff argues that his mental condition, which "resulted in anxiety, depression, and difficultly getting along with others . . . in turn interfered with his pursuit of mental health treatment." *Id.* at 13. To the extent that the ALJ's decision is based on a judgment that plaintiff was insufficiently diligent in seeking out additional treatment for his mental health symptoms, this was not a clear and convincing reason for discounting his allegations.

The Court of Appeals has held that it is a "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Plaintiff's testimony supports the conclusion that his mental

condition interfered with his pursuit of such treatment. *Garrison*, 759 F.3d at 1018, n.24; *accord Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010) ("The administrative law judge's reference to Spiva's failing to take his medications ignores one of the most serious problems in the treatment of mental illness—the difficulty of keeping patients on their medications."); *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (7th Cir. 2009) ("[F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.") (internal citations omitted); *Willig v. Berryhill*, No. 16-cv-3041-MEJ, 2017 WL 2021369, *7 (N.D. Cal. May 12, 2017) ("The ALJ did not evaluate whether Plaintiff's noncompliance with treatment was the result of her diagnosed borderline personality disorder or depression. By failing to do so, the ALJ improperly punished Plaintiff for exercising poor judgment in seeking rehabilitation.").

Based on the foregoing, the court finds that the ALJ erred by rejecting plaintiff's testimony absent clear and convincing reasons. Accordingly, the matter should be remanded for further proceedings. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted); *Treichler*, 775 F.3d at 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 9, is GRANTED.
2. The Commissioner's cross-motion for summary judgment, ECF No. 11, is DENIED.
3. The matter is remanded for further proceedings consistent with this order.
4. The Clerk of Court is directed to enter judgment in plaintiff's favor and close this case.

IT IS SO ORDERED.

Dated: September 25, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE